UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00192-GNS

ADRIENNE L. HOWELL, et al.                                          PLAINTIFF

v.

FATHER MALONEY'S BOYS' HAVEN, INC., d/b/a
FATHER MALONEY'S BOYS & GIRLS HAVEN, et al.                        DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants' Motion to Dismiss (DN 34), Plaintiff's Motion to Certify and for a Stay (DN 27), Plaintiff's Motion for Leave to File a Sur-Reply or to Strike (DN 48), and Plaintiff's Motion to Amend the Case Caption (DN 44). The motions are ripe for review. For the reasons that follow, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**, Plaintiff's motion to amend is **GRANTED**, and the remaining motions are **DENIED**.

## I.    BACKGROUND

This action arises from the assault Plaintiff Adrienne Howell ("Howell") suffered while working for Father Maloney's Boys & Girls Haven ("BGH"), a residential institution that provides treatment to at-risk youth. (Am. Compl. ¶¶ 1-2, 8, DN 24-3). Specifically, one of BGH's residents, R.B.L., choked Howell unconscious and sodomized her while she was working in a secluded barn on the BGH campus. (Am. Compl. ¶¶ 19-21).

Howell originally brought this action on March 5, 2018, in Jefferson Circuit Court. (Compl. 1, DN 1-2). She asserted Fourteenth Amendment claims against BGH and Jeff Hadley ("Hadley") (collectively "BGH Defendants") and against the Kentucky Cabinet for Health and Family Services ("CHFS"), former Secretary of CHFS Vickie Yates Brown Glisson ("Glisson"),

and acting Secretary of CHFS Scott Brinkman ("Brinkman") (collectively the "CHFS Defendants"). (Compl. ¶¶ 4, 6, 34-55). Howell also asserted a premises liability claim and what appears to be a fraudulent inducement claim, both under Kentucky state law, against the BGH Defendants. (Compl. ¶¶ 55-76). Finally, Howell asserted Kentucky state law intentional tort claims of assault and false imprisonment against R.B.L. (Compl. ¶¶ 77-83).

The CHFS Defendants removed the case to federal court on the basis of federal question jurisdiction over the Fourteenth Amendment claims and supplemental jurisdiction over the remaining claims. (Notice Removal 1-2, DN 1). Howell eventually restyled her "Fourteenth Amendment" claims against the CHFS Defendants and the BGH Defendants as 42 U.S.C. § 1983 claims. (Am. Compl. ¶¶ 32-33). The CHFS Defendants have since been dismissed from this case as a result of Howell's voluntary dismissal of her claims against CHFS and Brinkman and the Court's Fed. R. Civ. P. 12(b)(6) dismissal of Howell's Section 1983 claim against Glisson. (Order 3-8, DN 30). The remaining claims are Howell's Section 1983 claims against the BGH Defendants and Howell's state law claims against the BGH Defendants and R.B.L.

The BGH Defendants now seek to have all claims against them dismissed. (Defs.' Mot. Dismiss, DN 34). Howell asks this Court to amend the case caption, to certify a question of law to the Kentucky Supreme Court and stay all pending matters, and to file a sur-reply to the BGH Defendants' reply or to strike the BGH Defendants' reply.[1] (Pl.'s Mot. Amend Case Caption, DN 44; Pl.'s Mot. File Sur-Reply or Strike, DN 48; Pl.'s Mot. Certify Question, DN 27).

---

[1] Because the arguments Howell makes in her request to file a sur-reply or to strike the BGH Defendants' reply are irrelevant to the Court's disposition of this case at this time, Howell's request will be denied.

## II.    JURISDICTION

This Court possesses federal question and supplemental jurisdiction over this case. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted).

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint

presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## IV.     DISCUSSION

### A.     Motion to Amend the Case Caption

As a preliminary matter, Howell requests to amend this case's caption by modifying "R.B.L." to reflect R.B.L.'s full name, Robert Brown Lester ("Lester"), and to remove in the case caption "as a minor by and through his *parens patriae* [the Cabinet for Health and Family Services]" and "by and through his natural parent, Sherri Carter." (Pl.'s Mem. Supp. Mot. Amend Case Caption 1, DN 44-1). Lester is the individual alleged to have sexually assaulted Howell and was a minor at the time of the alleged sexual assault and at the time of the filing of Howell's suit. (Pl.'s Mem. Supp. Mot. Amend Case Caption 1-2). Lester has subsequently reached the age of majority. (Pl.'s Mem. Supp. Mot. Amend Case Caption 2).[2] Howell requests the case caption change to facilitate service because service upon the Cabinet and Carter was returned unexecuted and because service may be made upon Lester personally now that he is an adult. (Unexecuted Service, DNs 45, 46); *see* Fed. R. Civ. P. 4(e)(2)(A).

Finding no reason to deny Howell's motion, the Court will grant her request as Lester has now reached the age of majority and is the alleged perpetrator, not the victim, of the sexual assault, and because doing so will facilitate service. *Compare M.P.T.C. v. Nelson Cty. Sch. Dist.*, 192 F. Supp. 3d 798, 811 (W.D. Ky. 2016) ("To the extent that Plaintiff seeks to amend the case caption to substitute his initials with his full name because he has reached the age of majority, the Court grants the relief."), *with Doe v. Unified Sch. Dist. No. 259*, No. 05-1151-JTM, 2007 WL 1796202, at *3 (D. Kan. Jun 19, 2007) (refusing to change case caption to identify minor sexual assault

---

[2] A Kentucky CourtNet search confirms this fact.

victim who subsequently reached the age of majority to preserve privacy of victim and because the victim reaching the age of majority was the only reason for the requested name change).

### B.      Motion to Dismiss

The BGH Defendants seek to dismiss the three claims that Howell has asserted against them:  (1) a Section 1983 claim; (2) what appears to be a premises liability claim; and (3) what appears to be a fraudulent inducement claim.  (Am. Compl. ¶¶ 32-33, 43-76).  As explained in the next section, the BGH Defendants' motion is granted to the extent the Section 1983 claims against them are dismissed, while all other matters are remanded to the Jefferson Circuit Court.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere."  *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citation omitted).  Two elements are required to state a claim under Section 1983.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  "Absent either element, a section 1983 claim will not lie."  *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The BGH Defendants contend the § 1983 claims against them must be dismissed because they are not state actors and thus do not fall within the scope of a § 1983 action.  (Defs.' Mem. Supp. Mot. Dismiss 3-6).  The Sixth Circuit in *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992), outlined the relevant analysis:

> The principal inquiry in determining whether a private party's actions constitute "state action" under the Fourteenth Amendment is whether the party's actions may be "fairly attributable to the state."  The Supreme Court has set forth three tests to determine whether the challenged conduct may be fairly attributable to the state in order to hold the defendants liable under section 1983.  These tests are:  (1) the

public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test.

. . . The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain. . . .

. . . The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives. . . .

. . . Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. Merely because a business is subject to state regulation does not by itself convert its action into state action. Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983.

*Id*. at 1335 (internal citations omitted) (citation omitted). Although the BGH Defendants argue that none of these tests are satisfied here, Howell only addresses the public function test. (Pl.'s Resp. Defs.' Mem. Mot. Dismiss 16-19, DN 38).

Howell characterizes BGH as "a residential institution which provides treatment and crisis stabilization of at-risk youth" and as a "residential facility." (Am. Compl. ¶¶ 2, 41). Howell also calls BGH a "placement facility"[3] that provides an "appropriate level of care, custody, protection, and control" for "at risk youth . . . for their treatment needs and risk[] factors." (Am. Compl. ¶¶ 35-36). Howell refers to the children receiving services from BGH as its "campus residents" and sometimes terms the children to be under the "confinement and control" of BGH. (Am. Compl. ¶¶ 3, 50, 52). Howell alleges Hadley, the CEO of BGH, "[oversees] the provision of a 'program

---

[3] Howell's description of BGH as a "placement facility" appears to reference a facility where children are placed, not a facility in charge of determining where children are to be placed. (Am. Compl. ¶¶ 2-4, 34-37, 40-41, 43, 45, 49-50, 52).

of out-of-home care for delinquent or neglected children committed to or placed in [the] care and custody' of the [Kentucky Cabinet for Health and Family Services]." (Pl.'s Resp. Def.'s Mot. Dismiss 19, DN 38 (quotation omitted)).

The BGH Defendants characterize BGH as "a private, non-profit entity that provides therapeutic residential care, foster care, and independent living programs, independence readiness life skills training, preventative community-based services, and a variety of other programs and services for abused and neglected children." (Defs.' Mem. Supp. Mot. Dismiss 2, DN 34-1). Howell does not challenge this characterization in her response.

Howell's description of BGH reveals that BGH's primary, if not exclusive, function is the housing, education, and care of at-risk youth, which is a function not materially different from that provided by foster parents or a foster home. In that vein, "[t]he care of foster children is not a power which has been exclusively reserved to the state." *Lintz v. Skipski*, 807 F. Supp. 1299, 1306 (W.D. Mich. 1992); *see also Milburn by Milburn v. Anne Arundel Cty. Dep't of Social Servs.*, 871 F.2d 474, 479 (4th Cir. 1989) ("The care of foster children is not traditionally the exclusive prerogative of the State."); *Leshko v. Servis*, 423 F.3d 337, 343 (3d Cir. 2005) ("No aspect of providing care to foster children . . . has ever been the exclusive province of the government."); *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (agreeing with the district court's finding that foster care is not traditionally an exclusive state prerogative). "While removing a child from her home and placing her with other caregivers are arguably exclusive governmental functions, . . . the day-to-day provision of foster care is not. Several other courts agree." *Brown v. Hatch*, 984 F. Supp. 2d 700, 708 (E.D. Mich. 2013) (citing *Leshko*, 423 F.3d at 343; *Rayburn*, 241 F.3d at 1347; *Lintz*, 807 F. Supp. at 1306-07; *Darby v. California*, 1 F. App'x 688, 691 (9th Cir. 2001) (affirming district court's dismissal of Section 1983 claim against foster parent and

noting that plaintiffs did not offer sufficient evidence showing that foster mother was a state actor)).

The only authority Howell cites in opposition to the notion that foster care is not traditionally an exclusive state prerogative is the unpublished decision by the Eastern District of Michigan in *Johnson v. Williams*, No. 15-13856, 2017 WL 4236548 (E.D. Mich. Sept. 25, 2017). In *Johnson*, the plaintiff was a step-parent of a boy who had committed suicide while in the care of "a non-profit child-care institution." *Id*. at *1-2. A social worker had recommended the placement of the boy at the institution. *Id*. at *1. The court found the institution to be a state actor under the public function test and allowed the plaintiff's Section 1983 suit to proceed against the institution. *Id*. at *3-4.

The Court is disinclined to follow *Johnson*. The *Johnson* Court conflated the functions identified by that same Court in *Brown* to be different—i.e., "removing a child from her home and placing her with other caregivers" versus "the day-to-day provision of foster care"—in allowing a claim to proceed against the institution. *Brown*, 984 F. Supp. 2d at 708. *Johnson* did not cite *Brown* but relied instead on *Meador v. Cabinet for Human Resources*, 902 F.2d 474 (6th Cir. 1990). *Johnson*, 2017 WL 4236548, at *3-4. The plaintiffs in *Meador*, however, sought liability against state officials and a Kentucky state agency for the *assignment* of the plaintiffs to the foster home where the plaintiffs were sexually abused, not against the foster home where the abuse actually occurred or any employees of the home.[4] *Meador*, 902 F.2d at 475-77. The liability of

---

[4] The only defendants in *Meador* were a state agency, a foster home supervisor, and an intake supervisor; the individual defendants were employees of the Cabinet, not the foster home. *Meador*, 902 F.2d at 475. Specifically, the Sixth Circuit in *Meador* only discussed liability owed by the state to the plaintiffs and specifically characterized the defendants as "the Kentucky officials and the Cabinet." *Id*. at 475-77. Although one of the defendants was characterized as a foster home supervisor, it appears that she was a state employee who oversaw foster homes on behalf of the state agency, not an employee of the foster home. *Id*. at 475.

the foster home for the sexual abuse of the plaintiffs in its care was not at issue, evidenced by the court's discussion of only the relationship between the Cabinet and the Meador children and the duty of the state officials and state agency to ensure the welfare of children in foster care by responding to reports of abuse occurring in the foster home. *Id*. at 476-77. That discussion falls in lockstep with the distinction identified in *Brown* between (1) the public function of removing a child from an abusive situation and placing the child under appropriate care and (2) the private function of "the day-to-day provision of foster care." *Meador* does not support the contention that the actual day-to-day foster care is exclusively a state function so as to characterize foster homes as state actors to afford a Section 1983 claim against them.

The conflation of these two distinct functions is additionally evident by *Johnson*'s citation to *Lintz v. Skipski*, 25 F.3d 304 (6th Cir. 1994). *Johnson*, 2017 WL 4236548, at *3-4. *Lintz* mirrors the situation in *Meador*—the plaintiffs, victims of abuse in a foster care home, brought suit only against the state social worker who placed the victims in a foster home. *Lintz*, 25 F.3d at 305. The liability of the foster home and its employees, once again, was not at issue. In analyzing liability owed by the state to the victims, the Sixth Circuit highlighted the fact that "the state's role in placing children in foster homes [has been analogized] to the mental institution and prison settings in which state liability has been clearly established for 'deliberate indifference' to the plight of individuals in detention." *Id*. (citations omitted). Howell also highlights this statement in purported support of her position, which actually undermines her position. Per the *Lintz* analysis, the state's role is in *placing* children in suitable foster homes and *monitoring* them, not in providing day-to-day care for those children. *Id*. at 305-07.[5]

---

[5] Howell's reliance on the above-quoted statement in *Lintz* is further misplaced because that statement identifies courts' recognition of the substantive due process right of children "to be free from the infliction of unnecessary harm . . . in state-regulated foster homes" and has nothing to do

Finally, *Johnson* cited to Michigan statutes placing foster home responsibility in the state as supporting its characterization of day-to-day foster care as state action. It is immaterial, however, whether a state *now* asserts power over and responsibility of a certain function; rather, the relevant analysis properly focuses on whether the state has traditionally and exclusively performed that function:

> It is not enough that the federal, state, or local government exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function.

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928-29 (2019) (emphasis in original) (citations omitted). No case has been cited recognizing that the day-to-day provision of foster care has been a traditional and exclusive function of the state. The Court's own research reveals that the Second Circuit appears to be the only circuit to hold that "foster homes" perform public functions so as to give rise to Section 1983 liability on their part. *See e.g., CB v. St. Vincent's Services, Inc.*, 16 Civ. 2282 (RMB), 2018 WL 1737701, at *2 (S.D.N.Y. Mar. 19, 2018) (citing the Second Circuit's decisions in *Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974), and *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1997), as establishing the proposition that private child-care institutions are state actors). At least three federal district court opinions in New York, however, have recognized that the *Perez* and *Duchesne* decisions have been called into serious doubt, with one court stating that "the view enunciated by the Supreme Court has substantially replaced the approach relied upon in *Perez* and *Duchesne*." *Id*. at *4; *see Lynn ex rel. Julie B v. St. Anne Inst.*, 2006 WL 516796, at *13 (N.D.N.Y. Mar. 2, 2006) ("[T]he Court concludes that the Supreme Court

---

with determining whether day-to-day care of foster children is a public function. *See id.* at 305 (citations omitted).

has markedly changed the legal landscape of this area of law such that [*Perez* and *Duchesne*] are no longer controlling."); *Phelan ex rel. Phelan v. Torres*, 843 F. Supp. 2d 259 (E.D.N.Y. 2011) (recognizing unreliability of *Perez* and *Duchense*).  As such, there appears to be near uniformity among courts that the day-to-day provision of foster care is not a public function for purposes of characterizing the provider-of-care as a state actor subject to Section 1983 liability.

The Court in *Phelan* provided a particularly persuasive analysis as to why caring for foster children is not a public function.  In discussing the history of social welfare legislation in New York,[6] the Court in *Phelan* began its analysis by recognizing that "caring for abandoned children is a function that has traditionally been performed by private parties in New York."  *Phelan*, 843 F. Supp. 2d at 270.  The Court in *Phelan* then explained that New York state involvement in the foster care realm did not arise as a result of a traditional and exclusive involvement of the state in that realm but rather a recognition that "caring for children in need of foster care . . . is deemed best executed by government and is undertaken [by the government] without thought of profit or revenue."  *Id*. at 271 (quoting *Kochanski v. City of New York*, 76 A.D.3d 1050, 1052 (N.Y. 2010)).  The Court in *Phelan* also analogized caring for foster children to caring for the mentally ill.  *Id*. at 271–72.  "[C]are for the mentally disabled was neither traditionally nor *exclusively* reserved to the state."  *Id*. at 272 (emphasis in original) (quoting *Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255, 259 (2d Cir. 2008) (per curiam)).  Finally, as in the case before this Court, the plaintiff in *Phelan* did "not present[] any evidence that caring for abandoned children by placing them in foster homes was traditionally under the exclusive authority of the state."  *Id*. And, the Court in *Phelan* recognized that "[n]either *Perez* nor *Duchesne* expressly considered,

_____

[6] The Court has no reason to believe that Kentucky's involvement in the well-being of children materially differs from that of New York's.

much less held, that caring for abandoned children was a power 'traditionally *exclusively* reserved to the State.'" *Id*. (emphasis in original) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)).

In sum, Howell's description of BGH alleges it provides the same types of services traditionally provided by a foster home. Nothing about Howell's description of BGH likens it to a detention center,[7] but rather a facility providing housing, education, and general care to at-risk youth. BGH does not take part in the unquestionably public functions of the removal of children from their homes, the placement of those children in an appropriate environment, or the monitoring of foster homes; BGH *is* the "foster home" engaging in the private function of providing day-to-day care.

As noted above, Howell does not contend the state compulsion or symbiotic relationship/nexus tests are satisfied here so as to qualify BGH as acting under color of state law.[8] Because Howell has failed to plead facts sufficient to deem BGH as acting under color of state

---

[7] Although Howell cites to *Johnson* for the proposition that "care provided in a custodial setting is an activity traditionally reserved to the state," the cases cited in *Johnson* as support for that proposition involved care to imprisoned inmates. (Pl.'s Resp. 17); *Johnson*, 2017 WL 4236548 at *3 (citing *West v. Atkins*, 487 U.S. 42, 43–44 (1988); *Carl v. Muskegon Cty.*, 763 F.3d 592, 594 (6th Cir. 2014)). Howell has pled no facts suggesting that the children cared for by BGH are "imprisoned" there.

[8] Howell does not argue these points in her response or proposed sur-reply. In fact, the only factual allegations she pleads relevant to analyzing the satisfaction of these tests are that BGH and CHFS have a contractual relationship, BGH's activities are regulated, and BGH is subsidized with public funds. (Am. Compl. ¶¶ 37, 45). Howell has failed, however, to articulate how the contractual relationship between BGH and CHFS establishes state compulsion or a nexus with the state sufficient to characterize BGH as a state actor. *See Phelan ex rel. Phelan v. Torres*, 843 F. Supp. 2d 259, (E.D.N.Y. 2011) ("The fact that the state may contract with a private party to perform a function does not transform the private party into a state actor unless the function is traditionally exclusively a state function.") (citing *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009)). Moreover, "[m]erely because a business is subject to state regulation does not by itself convert its action into state action." *Wolotsky*, 960 F.2d at 1335 (citation omitted). Finally, "[t]he actions of a private entity do not become state action merely because the government provides substantial funding to the private party." *Id*. at 1336 (citations omitted).

law, even viewed in the light most favorable to her, her Section 1983 claims against the BGH

Defendants, BGH and Hadley, fail and will be dismissed.

### C.      All Remaining Matters

Courts are strongly encouraged to consider the issue of remand to state court after all

federal claims have been dismissed and diversity jurisdiction is not present.[9] *See Arrington v. City*

*of Raleigh*, 369 F. App'x 420, 421 (4th Cir. 2010) ("[T]he district court should have remanded the

case to state court upon the dismissal of all federal claims, even in the absence of a motion from

the parties that it do so.").  "A district court's decision whether to exercise [] jurisdiction after

dismissing every claim over which it had original jurisdiction is purely discretionary."  *Carlsbad*

*Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations omitted).  The Sixth Circuit in

*Gamel v. City of Cincinnati*, 625 F.3d 949 (6th Cir. 2010), explained the analysis this Court must

conduct:

> "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."

> There are, however, circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed. In *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195 (6th Cir. 2004), for example, the court found that the following factors weighed in favor of retaining supplemental jurisdiction over the remaining state-law claims:  (1) the plaintiff had engaged in forum manipulation by deciding to dismiss his federal-law claims only after the case had been on the district court's docket for 11 months, (2) the parties had completed discovery, and (3) the defendants' summary-judgment motions were ripe for decision.  Moreover, the district court "was familiar with the facts of the

---

[9] Diversity jurisdiction is not present here because Howell is a Kentucky citizen as of the date of the filing of her complaint and all defendants are Kentucky citizens.  (Am. Compl. ¶¶ 1-7); *see V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) ("Under [28 U.S.C. § 1332,] there must be complete diversity such that no plaintiff is a citizen of the same state as any defendant." (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005))).  Although Howell was an Indiana citizen at the time of her injuries, citizenship is determined at the time of the filing of the complaint, not at the time the injuries were suffered.  *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004).

case and already had invested significant time in the litigation." This court therefore concluded that the district court had properly exercised supplemental jurisdiction over the remaining state-law claims.

*Id*. at 952 (internal citations omitted) (citation omitted). *Gamel* also pointed to evaluation of the *Carnegie-Mellon* factors in determining whether the district court should retain supplemental jurisdiction over the claims: "the values of judicial economy, convenience, fairness, and comity." *Id*. at 951-52 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Finally, "[w]hen the . . . federal-law claim[s] in the action [have been] eliminated at an early stage of the litigation, [a] District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon*, 484 U.S. at 351.

*Gamel* and *Carnegie-Mellon* suggest a rebuttable presumption of remanding a case when all original jurisdiction claims have been dismissed. Also weighing toward remand is the fact that no evidence of "forum manipulation" exists here, unlike in *Harper*. Also in contrast with *Harper*, although this case has been on the docket since March of 2018, the parties have engaged in very little, if any, discovery—this case is essentially still in its infancy. Moreover, whereas summary judgment motions had been filed in *Harper*, this case remains at the motion to dismiss stage. Finally, this Court has not "invested significant time" in this case nor possesses such a familiarity with the facts so as to be better suited to handle this matter than any other court.

In evaluating the *Carnegie-Mellon* factors, comity weighs most heavily here. Howell raises three issues requiring attention specifically from Kentucky courts: (1) whether the immunity from suit provided by the Kentucky Workers' Compensation Act serves as a jurisdictional bar or acts as an affirmative defense that can be waived; (2) whether Kentucky courts should expand an exception to workers' compensation immunity; and (3) whether a certain provision within the Kentucky Workers' Compensation Act is unconstitutional. (Pl.'s Resp. Defs.' Mot. Dismiss 24-

26, DN 38; Pl.'s Mot. Certify 1-2, DN 27). "[C]omity of courts, whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere," dictates that Kentucky courts should address these issues. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting). The fairness factor also dictates that Howell should be able to test her arguments calling for Kentucky courts to modify their current interpretation of the law in a court better suited to carve exceptions to established Kentucky law. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." (citing *Strachman v. Palmer*, 177 F.2d 427, 431 (1st Cir. 1949))).

Although judicial economy and convenience may weigh toward retaining jurisdiction over this case, fairness and comity weigh more heavily toward remanding it. This consideration, coupled with the presumption of remand in this situation, indicate that remand of this case to the Jefferson Circuit Court is the best course of action. As such, the Court will refrain from ruling on all other matters not addressed above.

## V.     CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.     Plaintiff's Motion to Amend the Case Caption (DN 44) is **GRANTED**.

2.     Plaintiff's Motion to Certify and for Stay (DN 27) is **DENIED**.

2.     Plaintiff's Motion for Leave to File a Sur-Reply or to Strike (DN 48) is **DENIED**.

3.     Defendants' Motion to Dismiss (DN 34) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's 42 U.S.C. § 1983 claims asserted against Defendants Father Maloney's Boys & Girls Haven and Jeff Hadley are **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and all remaining claims are

**REMANDED** to the Jefferson Circuit Court.  The Clerk shall strike this matter from the active

docket.

Greg N. Stivers, Chief Judge
United States District Court

January 2, 2020

cc:     counsel of record
        Jefferson Circuit Court, Civil Action No. 18-CI-01298